IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTHONY HORNE,
#N-02869,

    Plaintiff,

vs.

                                      Case No. 18–cv–126–DRH

WEXFORD HEALTH CARE, INC.
CHRISTING BROWN, and
PATTY THULL,

    Defendants.

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Anthony Horne, an inmate in Pinckneyville Correctional Center ("Pinckneyville"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. In his Complaint, Plaintiff claims the defendants have been deliberately indifferent to his serious medical issues in violation of the Eighth Amendment. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

    (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
    (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
        (1) is frivolous, malicious, or fails to state a claim

1

> on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

### **The Complaint**

In his Complaint (Doc. 1), Plaintiff makes the following allegations: Wexford Health Care, Inc. ("Wexford") failed to ensure that there was an optometrist at Pinckneyville from October 31, 2016 to September 25, 2017. (Doc. 1, p. 6). Christine Brown neglected to ensure Plaintiff's medical needs were taken care of for nearly a year, knowing that there was no optometrist available at Pinckneyville despite a long list of people waiting to see the optometrist. (Doc. 1, pp. 6, 8). Dr. Michael Scott referred Plaintiff to an optometrist on November 14,

2

2016. *Id.* Plaintiff did not see anyone until August 22, 2017. *Id.* On August 22, 2017, Plaintiff was taken to an outside optometrist and diagnosed with macular dystrophy. *Id.* Plaintiff also learned that he would have to have laser surgery on his eyes. *Id.* Plaintiff would not have "gone through any of this if Christine Brown, and her staff, would have done what Dr. Scott ordered. They all knew [Plaintiff] was diabetic." *Id.* "Christine Brown had her own program going where [inmates] had to go through her unlawful program to see [an] eye doctor." *Id.* Brown also knew that because Plaintiff was diabetic, he needed to have his eyes dilated twice per year to see if his diabetes had affected his vision. (Doc. 1, p. 7). Plaintiff's eyes were not tested for nine months, despite the need for a test every six months. *Id.* Christine Brown also deceived Plaintiff by trying to sell reading glasses that were advertised as two dollars for eight dollars instead. (Doc. 1, p. 8).

Patty Thull did not "do her job because her job is to make recommendations not decisions. The director makes all final decisions." *Id.* Plaintiff received eyeglasses on November 8, 2017, over one year later. Plaintiff "had this eye problem since 2016." *Id.* Plaintiff returned to Marion Eye Center and was told that they were not going to treat him for his eye problem. *Id.* Plaintiff was told to wait to see if it got worse. *Id.* Plaintiff was also prevented from exhausting his administrative remedies on these issues, particularly by Patty Thull, because she refused to forward Plaintiff's grievance to Illinois Department of Corrections Director John Baldwin. (Doc. 1, pp. 10-11).

3

Plaintiff has constant headaches without proper glasses, as well as "macular dystrophy, nuclear cataract, bilateral." (Doc. 1, p. 12). "All defendants had knowledge of this unwanted punishment before sending Plaintiff to [an] outside optometrist." *Id.* "Christine Brown and staff held [Plaintiff's] prescription for 33 days until the new eye doctor came to Pinckneyville." (Doc. 1, p. 14). It is Christine Brown's "job as Health Care Administrator to make sure that her staff sends all prescriptions off to where ever they need to go. Not hold them another month for any reason." (Doc. 1, p. 16).

Plaintiff seeks declaratory and monetary relief. (Doc. 1, p. 17).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 3 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Brown and Wexford showed deliberate indifference to Plaintiff's serious medical need involving his macular dystrophy in violation of the Eighth Amendment.
>
> **Count 2 –** Brown and Wexford showed deliberate indifference to Plaintiff's serious medical need by delaying the fulfillment of his eyeglass prescription in violation of the Eighth Amendment.
>
> **Count 3 –** Patty Thull inhibited Plaintiff's access to the grievance procedure in violation of his due process and/or First Amendment rights and Illinois law by failing to forward Plaintiff's grievance(s) to John Baldwin.

As discussed in more detail below, Counts 1 and 2 will be allowed to

4

proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

The Court notes that it appears that Plaintiff may seek to bring claims against individuals or entities not included in the case caption. Because they were not listed in the case caption or list of defendants, these individuals or entities will not be treated as defendants in this case. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption"). Bob Blum, Dr. Nista, and John Baldwin, for example, were mentioned in the Complaint but were not included in the case caption or list of defendants and will not be considered defendants in this case.

## Count 1 – Macular Dystrophy

The Eighth Amendment protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

5

The Court finds that Plaintiff has satisfied the objective standard as he claims he has macular dystrophy that will soon require eye surgery. With respect to the subjective standard, Plaintiff claims that Brown failed to arrange for an optometrist to visit Pinckneyville despite knowing that there was a long list of inmates in need of an eye doctor, including him. Plaintiff also claims that Brown was aware of his diabetes, and knew that he required an eye exam every six months, but allowed Plaintiff to go nine months between exams despite his referral to an outside optometrist by Dr. Scott. These allegations are sufficient to state a claim against Brown at this early stage.

With respect to Wexford, a corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff has not alleged that any of the defendants either acted or failed to act as a result of an official policy espoused by Wexford. Therefore, Plaintiff cannot maintain a deliberate indifference claim against Wexford.

### Count 2 – Eyeglass Prescription

At this stage, Plaintiff's eyesight, which gives him headaches and prevents him from seeing properly without glasses, constitutes a serious medical need. *See* (Doc. 1, p. 21). Further, construing Plaintiff's claims in his favor, the Court

finds that Plaintiff's allegations against Brown, that she held his prescription for more than a month without good cause and that he was prevented from obtaining glasses for nearly a year despite his requests for them, satisfies the subjective standard. *See* (Doc. 1, p. 22). Count 2 will therefore proceed against Brown. Plaintiff's claims against Wexford fail for the reasons articulated under Count 1.

## Count 3 – Grievance Procedure

Generally, a prison official's mishandling of grievances states no claim where the official "otherwise did not cause or participate in the underlying conduct." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The mishandling of grievances by a prison official, more specifically, does not give rise to a First Amendment claim for the denial of access to the courts. The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before filing a suit in federal court. 42 U.S.C. § 1997e(a). However, administrative remedies are considered to be unavailable under the PLRA when prison officials mishandle or fail to respond to a prisoner's grievances. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (citations omitted). A plaintiff who can demonstrate the unavailability of administrative remedies is relieved from the obligation to exhaust them and can proceed with his or her suit. *Lewis*, 300 F.3d at 833.

The Complaint fails to state a claim against Thull for failing to forward Plaintiff's grievance(s) to John Baldwin. His access to the courts could not have been impeded by the alleged actions, as the unavailability of administrative remedies, as explained above, is no bar to potential litigants bringing their claims. Further, Plaintiff cites 730 Ill. 5/3-2-3 in support of his claim. A federal court, however, does not enforce state law and regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). "The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension." *Vruno v. Schwarzwalder*, 600 F.2d 124, 130-31 (8th Cir. 1979) (citations omitted).

For the foregoing reasons, Count 3, for Thull's failure to forward Plaintiff's grievance(s) to John Baldwin, thereby impeding his ability to exhaust administrative remedies, shall be dismissed with prejudice as frivolous.

### **Pending Motions**

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3) which is **REFERRED** to a United States Magistrate Judge for a decision.

Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) is **DENIED** as moot. Waivers of service of summons will be issued and served on the remaining defendant as ordered below. Plaintiff is advised that it is not necessary for a litigant proceeding *in forma pauperis* to file a motion requesting service of process by the United States Marshal Service or other process server.

8

The Clerk will issue summons and the Court will direct service for any complaint that passes preliminary review.

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1** and **2** shall **PROCEED** against **BROWN**.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED** with prejudice as frivolous.

**IT IS FURTHER ORDERED** that **WEXFORD HEALTH CARE, INC.** and **THULL** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that as to **COUNTS 1** and **2**, the Clerk of Court shall prepare for **BROWN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the

defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for

want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2018.02.08
12:24:19 -06'00'

**United States District Judge**